United States District Court
Southern District of Texas
**ENTERED**
May 09, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALFA LAVAL INC., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-2597 |
| | § | |
| FLOWTREND, INC., *et. al.*, | § | |
|     Defendants. | § | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion for Partial Summary Judgment [Doc. # 56] filed by Plaintiff Alfa Laval, Inc. ("Alfa Laval"), to which Defendants Flowtrend, Inc. ("Flowtrend"), Joseph Allman, Jan Hansen and Steven Stovall filed a Response [Doc. # 63], and Plaintiff filed a Reply [Doc. # 71].  Also pending is Defendants' Motion for Summary Judgment [Doc. # 59], to which Plaintiff filed an Opposition [Doc. # 66], and Defendants filed a Reply [Doc. # 67].

Defendants filed a Motion to Exclude the Expert Testimony of Lyle W. Clem ("Clem Motion") [Doc. # 54], to which Plaintiff filed an Opposition [Doc. # 65], and Defendants filed a Reply [Doc. # 70].  Defendants also filed a Motion to Exclude the Expert Testimony of Robert Dumke ("Dumke Motion") [Doc. # 55], to which Plaintiff filed an Opposition [Doc. # 64], and Defendants filed a Reply [Doc. # 68].  Plaintiff filed a Motion to Exclude Expert Witness Joseph Allman ("Allman Motion") [Doc.

# 57], to which Defendants filed a Response [Doc. # 62], and Plaintiff filed a Reply [Doc. #69].

Having reviewed the record and the applicable legal authorities, the Court **grants in part and denies without prejudice in part** the motions to exclude experts. The Court **grants** Defendants' Motion for Summary Judgment as to the Copyright Act claim, and **denies** Defendants' Motion for Summary Judgment in all other respects. The Court **denies** Plaintiff's Motion for Partial Summary Judgment.

## I.   BACKGROUND

Alfa Laval supplies machinery and equipment, including pumps, valves, fittings, and tank equipment, for use in the food processing, pharmaceutical, and other industries that require high sanitary standards.   Alfa Laval also sells Original Equipment Manufacturer ("OEM") replacement parts for its machinery and equipment.

Flowtrend sells aftermarket non-OEM replacement parts, including parts for Alfa Laval equipment and machinery.[1]  Indeed, Flowtrend sells approximately 9,500 types of replacement parts for Alfa Laval products.  Flowtrend identifies its parts as replacements for Alfa Laval equipment and machinery using the Alfa Laval names and designations.  Flowtrend states in its advertising, *inter alia*, that "a majority of

---

[1]     Defendants Allman, Hansen and Stovall are owners and officers of Flowtrend.

[Flowtrend's] products are identical to their name brand counterparts," that its replacement parts are interchangeable with Alfa Laval parts, are just like OEM parts, and meet or exceed OEM specifications.  Plaintiff alleges that this constitutes false advertising, and that Flowtrend infringes the Alfa Laval trade dress and engages in unfair competition in violation of the Lanham Act.

Alfa Laval alleges that it has a registered copyright in certain product brochures and manuals (the "Copyrighted Materials").  Plaintiff alleges that Defendants violated the Copyright Act by posting these Copyrighted Materials on the Flowtrend website.

Plaintiff filed this lawsuit on September 9, 2014, asserting a Lanham Act claim for trade dress infringement, unfair competition, and false advertising.  Plaintiff also asserted a Copyright Act claim, and Texas state law causes of action for tortious interference with prospective business relations, unfair competition, and unjust enrichment.  On November 17, 2014, Plaintiff filed a First Amended Complaint [Doc. # 29], on August 14, 2015, Plaintiff filed a Second Amended Complaint [Doc. # 42], and on September 15, 2015, Plaintiff filed a Third Amended Complaint [Doc. # 46]. In the Third Amended Complaint, Plaintiff abandoned its unjust enrichment claim. Plaintiff later withdrew its tortious interference claim.  The remaining claims are the Lanham Act claim, the Copyright Act claim, and the Texas law unfair competition claim.

Plaintiff and Defendants have filed motions challenging the other party's experts. Plaintiff and Defendants also filed motions seeking summary judgment on some but not all claims. The motions have been fully briefed and are now ripe for decision.[2]

## II.   MOTIONS TO EXCLUDE EXPERTS

Defendants ask the Court to exclude testimony from Plaintiff's experts Lyle W. Clem and Robert Dumke.[3]  Plaintiff asks the Court to exclude Joseph Allman as an expert witness for Defendants.  The Court has carefully reviewed the experts' opinions,[4] the parties' briefing, and the applicable legal authorities.  Based on that review, the Court rules that the three expert witnesses may testify as to certain matters but not others.  To the extent the Court does not address a specific proffered opinion, testimony regarding that opinion may be offered at trial subject to cross-examination.

---

[2]     The parties filed a redacted version of their briefing on the public Electronic Case Filing system, and filed an unredacted version under seal.  The Court reminds the parties and their counsel that the trial of this case will be in open court and all exhibits will become part of the public record.

[3]     The Court at trial will not refer to such witnesses as "experts," but as witnesses who are permitted to give opinions.  Similarly, counsel should not during trial refer to these witnesses as "experts."

[4]     The Court's practice is not to admit expert reports into evidence during trial.  Instead, the relevant and admissible evidence will be presented to the jury through the expert's testimony.  The written report, though not admitted as evidence, can be used during cross-examination.

A.    **Applicable Legal Standard**

Certain witnesses are permitted under the Federal Rules of Evidence to give opinions.  "A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise" if his testimony will assist the trier of fact, has an adequate factual basis, and is the result of reliable principles and methods that the expert has reliably applied to the facts of the case.  *See* FED. R. EVID. 702.  In ruling on a motion to exclude an expert's testimony, the Court functions as a gate keeper and permits expert testimony only if it is reliable and relevant.  *See Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013).  The reliability inquiry is a "flexible" one, and the Court has "broad latitude when [deciding] how to determine reliability and in the reliability determination" itself.  *In re MBS Mgmt. Servs., Inc.*, 690 F.3d 352, 357 (5th Cir. 2012) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141-42 (1999)).

"In rulings on the admissibility of expert opinion evidence the trial court has broad discretion . . .."  *Wellogix*, 716 F.3d at 881.  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993))).

### B.      Clem Motion

Lyle W. Clem has 35 years experience as a designer of processing systems and facilities in the food, pharmaceutical, dairy, beverage, and biotechnology industries. In August 2015, he examined the following several items:  an Alfa Laval Model 761 valve, a cutaway example of an Alfa Laval Model 761 valve actuator, and two Flowtrend valves that are marketed as replacements for the Model 761 valve.  Based on his examination, including his observation that the Alfa Laval valves contained two concentric springs and the Flowtrend valves he examined contained a single spring, Clem opines that "the parts and devices supplied by Flowtrend" are not identical to the corresponding Alfa Laval parts.  Clem opines further that, although the Flowtrend valves are physically interchangeable, Flowtrend's parts are not "interchangeable parts" because they lack "cleanability" features.

Clem clearly has the experience required to compare the Alfa Laval Model 761 valves with the corresponding Flowtrend valves and to express an opinion regarding the comparison of the specific valves he examined.[5]  It is undisputed, however, that Clem did not examine any of the other approximately 9,500 replacement part models sold by Flowtrend and, as a result, would not be able to provide testimony regarding

---

[5]      Defendants note in their Clem Motion that each of the parts Clem examined was selected and supplied to him by Plaintiff.  This is a matter that can be covered adequately through cross-examination and is not a basis to exclude Clem's testimony.

any other type replacement part.  The request to exclude his testimony regarding products other than the Model 761 valve is granted.

Clem also seeks to opine that Flowtrend's packaging, including the use of bright green, "is clearly indicative" of Flowtrend's intent to deceive.  There is no evidence that Clem has the necessary training or experience that would enable him to express an opinion regarding Flowtrend's state of mind.  In the Response to the Clem Motion, Plaintiff argues for the first time that Clem is offered as a fact witness pursuant to Rule 701 of the Federal Rules of Evidence to opine that the color green or the letters "AL" on a product or packaging "leads a customer to believe" it is an Alfa Laval product.  Rule 701 permits a lay witness to present opinion testimony if the opinion is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (3) not based on scientific, technical or other specialized knowledge within the scope of Rule 702."  *See* FED. R. EVID. 701.  Plaintiff argues that Clem's opinions are based on his own experiences.  Clem's personal experience with the use of the color green is not relevant in this case because there is no evidence that Clem's experiences were as a purchaser or consumer of Alfa Laval parts.  Plaintiff argues that Clem's proffered opinion will assist the jury because "jurors do not purchase sanitary valves and components."  *See* Opposition [Doc. # 65], p. 3.  There is no evidence, however, that

Clem has experience purchasing sanitary valves and components.  As a result, the Motion to Exclude Clem's testimony regarding Flowtrend's intent is granted.

Clem also seeks to opine regarding whether Flowtrend replacement parts comply with certain sanitary standards.  This opinion, which relates to established sanitary standards and not to "OEM standards" to which Flowtrend referred in its advertising, is not relevant to any issue in this lawsuit.  As a result, the Motion to Exclude Clem's testimony regarding sanitary standards is granted.

### C.    Dumke Motion

Robert Dumke is the current Operations Manager, USA, for Alfa Laval. Plaintiff expects Dumke to offer the opinion that Flowtrend parts are neither identical to nor interchangeable with Alfa Laval parts.  It is undisputed that Dumke examined a Flowtrend replacement part for the Alfa Laval Model 761 valve and a replacement wave spring for an Alfa Laval SRU-3 pump.  There is no evidence that Dumke examined any other parts or models.  As with Clem, Dumke is capable of providing testimony regarding the specific parts he examined, but he has not examined a sufficiently large sample to opine regarding the thousands of other Flowtrend replacement parts.

Dumke also opines that damage to an Alfa Laval SRU-3 pump was caused by a Flowtrend replacement wave spring.  There is no evidence that Dumke has the

necessary training or experience to opine regarding the cause of the damage.  Dumke can testify regarding the differences he observed between the Alfa Laval wave spring and the Flowtrend replacement wave spring, but may not testify that the replacement spring caused specific damage to a particular pump.

### D.  Allman Motion

Joseph Allman is Flowtrend's Vice President of Sales.  Alfa Laval challenges Allman's qualifications to offer opinions regarding product engineering, design, testing, and certification.  Alfa Laval objects specifically to Allman's anticipated testimony regarding testing he performed.

From 1993 through 1996, Allman worked as a technical sales representative for a distributor of Alfa Laval products.  From 1996 through 2006, Allman was a District Manager and then a Regional Manager for Alfa Laval.  Beginning in 2006, Allman has been Vice President of Sales for Flowtrend.  In these positions, Allman obtained significant knowledge and experience about Alfa Laval and Flowtrend products, including their design and function.  This knowledge and experience enable him to testify at trial regarding any testing that he performed or that was performed under his supervision, and the results of that testing.  He will not be permitted to testify, however, regarding the relative "superiority" of the competing products.

## III.  **MOTIONS FOR SUMMARY JUDGMENT**

Defendants seek summary judgment on Plaintiff's Copyright Act claim, arguing that it is barred by the applicable three-year statute of limitations.  Defendants seek summary judgment on Plaintiff's Lanham Act claim, arguing that it is barred by laches and the nominative fair use defense.  Defendants seek summary judgment on the federal false advertising act claim, arguing that Plaintiff has failed to present evidence that raises a genuine issue of material fact as to each element of the claim.

Plaintiff seeks summary judgment on its Copyright Act claim and its federal false advertising claim.  Neither party seeks summary judgment on Plaintiff's state law unfair competition claim.

### A.  **Applicable Legal Standard**

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a plaintiff who fails to make a sufficient showing of the existence of an element essential to its case and on which it will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  To obtain summary judgment on an affirmative defense, a defendant must establish the defense's essential elements.  *See Wilson v. Epps*, 776 F.3d 296, 299 (5th Cir. 2015) (citing *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)).

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(a); *Celotex*, 477 U.S. at 322-23; *Curtis*, 710 F.3d at 594.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012).  The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  "An issue is material if its resolution could affect the outcome of the action." *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013).  "A dispute as to a material fact is genuine if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.'" *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002); *accord Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted). In the absence of any proof, the court will not

assume that the non-movant could or would prove the necessary facts.  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-13).  The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413); *accord, Little*, 37 F.3d at 1075. Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.  *See* FED. R. CIV. P. 56(c)(4); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000).

## B.    <u>Copyright Act Claim</u>

"The Copyright Act provides that '[n]o civil action shall be maintained under the [Act] unless it is commenced within three years after the claim accrued.'" *Petrella v. Metro-Goldwyn-Mayer, Inc.*, __ U.S. __, 134 S. Ct. 1962, 1964 (2014) (quoting 17 U.S.C. § 507(b)).  "A claim ordinarily accrues 'when [a] plaintiff has a complete and present cause of action.'" *Id.* at 1969 (quoting *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)).  A claim under the Copyright Act accrues when an infringing act occurs.  *See id.*  Many federal

appellate courts, including the Fifth Circuit, apply a "discovery rule," holding that a claim accrues once the plaintiff knows or, through the exercise of due diligence should have known, of the injury that forms the basis for the Copyright Act claim.  *Id.* at 1969, n.4; *see also Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388, 393 (5th Cir. 2014).

The copyright statute of limitations is subject to a "separate-accrual rule" which provides that "when a defendant commits successive violations, the statute of limitations runs separately from each violation." *Petrella*, 134 S. Ct. at 1969; *see also Makedwde Pub. Co. v. Johnson*, 37 F.3d 180, 182 (5th Cir. 1994).  "Each time an infringing work is reproduced or distributed, the infringer commits a new wrong" that gives rise to a new claim with a new limitations period.  *Petrella*, 134 S. Ct. at 1969. The "separate-accrual rule" does not extend the statute of limitations, however, for separately accruing harm from a single act of infringement.  *Id.* at 1969, n.6.

In this case, Alfa Laval has admitted that it was aware as early as 2009 that the Copyrighted Materials were on Flowtrend's website.  By May 2010, Alfa Laval knew that a customer of affiliate Alfa Laval Benelux had downloaded the Copyrighted Materials from Flowtrend's website.   Plaintiff did not file this lawsuit until September 9, 2014, well beyond the three-year statute of limitations.

There is no evidence that Defendants engaged in new acts of copyright infringement after it originally posted the Copyrighted Materials on its website, which occurred by 2009.  There is no evidence cited by Plaintiff to suggest that Defendants reposted the Copyrighted Materials after the original posting in 2009.  Although others may have downloaded the Copyrighted Material after that date, Defendants are "only liable for [their own] acts of infringement committed within three years prior to Plaintiff's lawsuit." *Makedwde*, 37 F.3d at 182.  Defendants' single posting of the Copyrighted Materials on Flowtrend's website is analogous to the defendant printer in *Maloney v. Stone*, 171 F. Supp. 29, 32 (D. Mass. 1959), cited by the Fifth Circuit in *Makedwde*.  The defendant in *Maloney* printed copyrighted materials outside the statute of limitations.  The Massachusetts federal court noted that there was "no merit to plaintiff's suggestion that [the defendant] merely because he was [the] printer is liable for each sale that [is] made, and that the liability flowing from such sale arises for the first time when it is made." *Makedwde*, 37 F.3d at 182 n.5 (quoting *Maloney*, 171 F. Supp. at 32).  The statute of limitations here began to run when Plaintiff discovered or should have discovered the Copyrighted Materials on Flowtrend's website, which occurred no later than May 2010.  Absent later independent acts of copyright infringement by Defendants, the "separate-accrual rule" does not extend the limitations period. *See Petrella*, 134 S. Ct. at 1970.

Plaintiff's claim under the Copyright Act is barred by the applicable three-year statute of limitations.  As a result, Defendants are entitled to summary judgment on the claim.  For the same reason, Plaintiff's motion for summary judgment on the Copyright Act claim is denied.

### C.    Laches Defense

Defendants argue that Plaintiff's Lanham Act claim for trade dress infringement, unfair competition, and false advertising is barred by the equitable doctrine of laches.  "Laches is commonly defined as an inexcusable delay that results in prejudice to the defendant."  *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998) (citing *Conan Prop., Inc. v. Conans Pizza, Inc*., 752 F.2d at 153 (5th Cir. 1985)).  The laches defense requires proof of "(1) delay in asserting a right or claim; (2) that the delay was inexcusable; [and] (3) that undue prejudice resulted from the delay."  *Id.*

Because the Lanham Act contains no express limitations period, Courts look to the most analogous state law statute of limitations to determine the applicable laches period.  *See Jaso v. Coca Cola Co.*, 435 F. App'x 346, 356 (5th Cir. 2011).  In Texas, the most analogous limitations period is the four-year period applicable to fraud claims.  *See id.*  The period for evaluating a laches defense begins when the plaintiff knew or should have known of the alleged infringement.  *Id.*  In the Fifth Circuit, "acts

after receiving a cease and desist letter are at the defendant's own risk because it is on notice of the plaintiff's objection to such acts." *Id.* (citing *Conan Properties*, 752 F.2d at 151-52).   Therefore, because the plaintiff cannot establish the undue prejudice prong of the laches defense, the relevant laches period ends when the plaintiff sends a cease and desist letter objecting to the alleged violation of the Lanham Act. *See id.*; *RE/MAX Intern., Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 710 (S.D. Tex. 2009) (Rosenthal, J.).

In this case, Defendants argue that Plaintiff knew or should have known of the alleged Lanham Act violation as early as October 2006.   Alfa Laval admits having knowledge as early as June 2007 and no later than February 2008.   It is undisputed that Alfa Laval sent Flowtrend a cease and desist letter on March 11, 2008, less than two years after the earliest date, and less than two months after the latest date, on which the laches period would have begun.   Alfa Laval sent a second cease and desist letter to Flowtrend on April 2, 2010.   It is also undisputed that Flowtrend responded to each of the cease and desist letters, disputing Alfa Laval's position that Flowtrend was violating the Lanham Act.

Under binding Fifth Circuit authority, the period for evaluating a laches defense ended when the March 2008 letter was sent to Flowtrend.   After that date, there could be no "undue prejudice."   Because the period of time between October 2006, the date

on which Defendants argue the laches period began, and the March 2008 letter was less than four years, Defendants are not entitled to summary judgment on the Lanham Act claims based on a laches defense.

### D.     Nominative Fair Use Defense

"The nominative fair use doctrine provides that one who has lawfully copied another's product can tell the public what he has copied." *Bd. of Supervisors of La. St. Univ. v. Smack Apparel Co.*, 550 F.3d 465, 488 (5th Cir. 2008) (internal quotation and citation omitted).  The doctrine permits one to "use another's mark truthfully to identify another's goods or services in order to describe or compare its product to the markholder's product." *Id.*  The right of nominative fair use is limited, however, to uses that do not create "a likelihood of confusion as to source, sponsorship, affiliation, or approval." *Id.*  To obtain the protection of the nominative fair use doctrine, "the defendant (1) may only use so much of the mark as necessary to identify the product or service and (2) may not do anything that suggests affiliation, sponsorship, or endorsement by the markholder." *Id.* at 489.

In this case, Plaintiff has presented evidence that raises a genuine issue of material fact regarding whether Flowtrend used Alfa Laval's trademark truthfully. For example, Flowtrend uses the Alfa Laval trademarks in connection with advertising statements that Flowtrend products are "identical" to the corresponding Alfa Laval

product.  Plaintiff has presented evidence that the statements are not truthful because not all Flowtrend and Alfa Laval products are identical.  Because there exists a genuine issue of material fact regarding whether Flowtrend truthfully used the Alfa Laval trademarks, Defendants are not entitled to summary judgment on their nominative fair use defense.

### E.   **Federal False Advertising Claim**

Plaintiff and Defendants each seek summary judgment in their favor on Plaintiff's false advertising claim under the Lanham Act.  To prove a claim of false advertising under the Lanham Act, a plaintiff must establish the following five elements:

(1)   a false or misleading statement of fact about a product;

(2)   a statement which actually deceived or had the capacity to deceive a substantial segment of potential consumers;

(3)   a material deception in that it was likely to influence a consumer's purchasing decision;

(4)   the product was in interstate commerce; and

(5)   plaintiff had been or was likely to have been injured as a result of the statement in issue.

*See Logan v. Burgers Ozark Country Cured Hams, Inc*., 263 F.3d 447, 462 (5th Cir. 2001); *Pizza Hut, Inc. v. Papa John's Int'l, Inc*., 227 F.3d 489, 495 (5th Cir. 2000). When the statements of fact at issue are literally false, the Court will assume the

statements actually misled consumers.  *Pizza Hut*, 227 F.3d at 497.  If the statements are misleading, rather than literally false, the plaintiff must present evidence of actual consumer deception.  *See id.*

In this case, the parties have submitted competing evidence that raises a genuine issue of material fact.  For example, Plaintiff has presented evidence that Defendants stated in advertising that Flowtrend products are "identical" to Alfa Laval products, and that they are "interchangeable."  When the statements are considered in context, it is unclear whether they are literally false and/or whether they are misleading.[6] There is also a genuine issue of material fact regarding whether the statements were likely to influence consumers' purchasing decisions given the other available suppliers of aftermarket replacement parts.  As a result, both Plaintiff's Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment on the false advertising claim are **denied**.

---

[6]   Plaintiff asserts that Defendants stated that all their products are identical and interchangeable with those of Alfa Laval.  Based on that assertion, Plaintiff argues that if Plaintiff can identify a single Flowtrend product that was not identical or interchangeable, they can prevail on the false advertising claim and recover damages as if none of the Flowtrend products was identical or interchangeable.  Even if Plaintiff presents an example of Flowtrend advertising in which it is represented that "all" Flowtrend products are identical or "interchangeable," the Court views Plaintiff's damages model with some skepticism and will require Plaintiff to cite recent, binding legal authority to support its position.

IV.    **CONCLUSION AND ORDER**

Based on the foregoing, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 59] is **GRANTED** as to the Copyright Act claim and **DENIED** in all other respects.  It is further

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment [Doc. # 56] is **DENIED**.  It is further

**ORDERED** that Defendants' Motion to Exclude Expert Testimony of Lyle W. Clem [Doc. # 54], Defendants' Motion to Exclude Expert Testimony of Robert Dumke [Doc. # 55], and Plaintiff's Motion for Exclude Expert Witness Joseph Allman [Doc. # 57] are **GRANTED in part and DENIED without prejudice in part**.  It is further

**ORDERED** that the case remains scheduled for docket call on June 6, 2016.

**SIGNED** at Houston, Texas, this **9th** day of **May, 2016**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE